**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
CRIMINAL DIVISION

CASE NO. B23004803

Miami Beach

vs.

Ari Teman, Defendant, pro se[1]

_____/

**MOTION TO COMPEL DISCOVERY**

1.  COMES NOW the Defendant, Ari Teman, pro se, and hereby files this Motion to Compel Discovery, requesting the Court to order the City and State to:

    a.  produce the access log of all Body Worn Camera (BWC) footage, and

    b.  explain gaps and cuts in the video after the police are heard making discriminatory statements about the "Jewish Community", and also explicitly coaching the witnesses – who had *already* stated they did not wish to press charges – to make false statements and press charges to avoid them being arrested should Teman press charges against Kats and Siblesz and others for assaulting him (see transcript below and also the attached Statement of Dan Maza),  and

    c.  identify and  all parties engaged by the police on the BWC footage, and

    d.  explain why senior officers instruct MBPD Officers Reisgo and Rodrigues to redact an individual with a restraining order against him from their report, and

    e.  explain how a recorded extortion by an unidentified CrossFitter against the cafe owner trying to get him to press charges against Teman was handled, and

    f.  provide additional discovery, requests for which the City Attorney's have ignored and/or failed to provide since March 2023.

---

[1] The Defendant is pro-se against his will, despite asking for counsel, and maintains that denying a public defender regardless of "no jail" stipulations is a violation of the 6th and 14th Amendments, and in violation of SCOTUS' logic *Padilla v Kentucky*. Severe consequences and irrevocable harm can be caused to any defendant without counsel, including immigration, funding, child custody, bond conditions, parole conditions, and the like, regardless of no-jail stipulations.

2.  Teman asks the Government to produce the full and complete video of the conversation quoted here, which mysteriously cuts-out after Miami Beach Police Officer Rodrigues makes statements to State witness Jesse Kats about "the Jewish Community":

> [2]12:09 RODRIGUES: You made it an issue today
>
> 12:15: RODRIGUES: But the law isn't fair and you know…
>
> **12:20 KATS: I just don't want to be put into a position where I'm going to be charged with something**
>
> RODRIGUES: I know. **But unfortunately, and I mean, we're talking on camera, but you know, it's like… I don't think it will turn into… I mean I'm hoping right**
>
> KATS: Me either. But I'm afraid he's [Teman] going to find something.
>
> RODRIGUES: But he [Teman] won't speak to us…. **And that community…the Jewish community. They have their own.**

3.  The BWC clip is suddenly and abruptly ended. Obviously this is very suspicious. The next set of footage does not have the continuation of this clip. The Defendant has been unable to find the rest of Officer Rodriges statements to Mr. Kats continuing that statement in the BWC footage.

4.  The footage appears to be missing or buried (provided out of sequence so it would be difficult to locate or match-up).

5.  Other BWC clips appear to be longer and so the length of the clip is not an explanation for the sudden cut after mentioning the "Jewish Community". The City and State should therefore explain this cut, and also provide the footage where Officer Rodrigues continues to make statements about the Jewish Community. (Going forward, unless specified, "City and State", "City", "State", and "Government" shall mean the prosecuting municipality/team.)

6.  Teman has also repeatedly asked the City and State to identify the individual here in this transcript (quoted in more length below, and called here "2nd Male CrossFitter"), who encourages Ms. Siblesz to press charges against Teman to protect Mr. Kats from having charges made against him by Teman:

---

[2] Video at https://bit.ly/MBTemanKatsBodySlamsJewish
Note:  To spare the Court and others from typing very long URLS, Defendant is using a url shortener service. The links should redirect directly to city's OneDrive of the videos. Defendant has no edit control of these video files as he is linking to the City's hosted copy.

KATS: I charged him [Teman] and they [Kats' necklaces] broke

…

MBPD OFFICER RODRIGUES  (13:03): It would help if she wanted to press charges. You know what I'm saying?

KATS: We'll see what's going to happen

KATS: Isa, do you want to press charges?

SIBLESZ: It will help you? [Siblesz pointing to Katz (13:16)]

2nd MALE CROSSFITTER: Because he's [Teman is] going to.

KATS: If something rolls around, you know…

2nd Male CrossFitter (to Pasquale the Caffe Umbria Owner): "You're the owner, you know our position… but we have to protect him (pointing to Kats) because you know.

Cafe Owner: Yeah, yeah, yeah, no, no, no.

2nd Male CrossFitter: "That's a lot of people not coming to the coffee shop anymore."[3]

MBPD OFFICER REISGO: It [the surveillance video] doesn't show him

## The City Has Ignored and Continues to Ignore Discovery Requests

7.  Notably, Mr. Nahum Joseph and his office, as well as the City's Civil Rights attorneys, ignored requests by the Defendant for the BWC until after the Defendant filed a Civil Rights claim in SDFL to compel production of the footage, alleging conspiracy to violate Civil Rights. Only after Mr. Teman notified Mr. Joseph and his team, and Mayor Gelber and Vice Mayor Meiner, by email of the Civil Rights suit, did Mr. Joseph email that they would fulfill their discovery obligations by providing what is in their possession.[4]

---

[3] This appears to be extortion, threatening the Caffe Umbria owner with a boycott to get him to press charges or assist them in doing so.

[4] The Defendant notes, as the Court is surely aware, that the State's obligations extend to provide more than is in their possession and to seek out exculpatory evidence and evidence which might impeach their own witnesses.



8. It is notable that Mr. Joseph did not even have the documents on-hand before deciding to proceed to arraignment. More notable, he ignored requests for basic discovery items such as BWC footage until *after* he and the city were notified of a Civil Rights suit drafted and a copy provided to him 3.5 hours before he emailed what is shown above.

9. There are also troubling cuts and gaps after Police Officer Rodrigues and Police Officer Reisgo are heard on BWC coaching witnesses Kats and Siblesz, who at first both state to the officers that they do not want to press charges and are not injured, and who admit (Siblesz) that she grabbed and threw a chair Teman was standing by, and that (Kats) did not see Teman hit anyone and that Kats charged at Teman:

> KATS (8:42): So this traffic barricade. He [Teman] was standing here.
> So this is how it played out. Our guys are running. He started
> chasing after them like this [KATS MIMICS ME HOLDING UP A PHONE
> CAMERA]. (8:52)
>
> KATS: And he turns around and shoves his camera in our face.



Caption: **Kats mimics Temans standing and holding up his smartphone camera.**

RODRIGUES: And says what? Does he say anything?

KATS: I was back there  (8:59)

[KATS points back a long distance to far behind where Rodrigues is
standing at the time of the BWC screenshot above.

Note the photo, below, which Teman at that time does not even show Kats,
who must have been VERY far back such that he could not hear or see
clearly.]



**CAPTION: Photo of "Man in Gray T-Shirt" who struck Teman in the chest per the statement of Dan Maza (Father with his family at the cafe) and Eduardo (Cafe Barista)**

RODRIGUES: Okay

…

RODRIGUES: But how did he he get to here?

KATS: He just started walking. (9:33)

**KATS: Because he was trying to get a video of all of us.**

KATS: And then BOOM I hit him.



Photo caption: Kats mimics Teman falling after Kats body slams him



Caption: Photo taken by Teman after Kats body-slammed him. Teman has repeatedly asked Mr. Nahum Joseph and his team to identify the man holding Kats back from continuing to attack Teman.

10. There are also audio issues and hands in front of cameras during times Reisgo and Rodrigues can be heard and seen on BWC coaching and feeding Kats and Siblesz on exactly what statements to make, word-for-word, and that they should press charges or Teman may have them arrested. Note, again, that Siblesz and Kats had both told the officers they did not want to press charges and that they were not injured.

11. Only after Reisgo comes back from the ambulance where an M.D. was tending to Mr. Teman's bruises and doing an ultrasound to check for internal bleeding due to Kats body slamming Mr. Teman in the head and neck, does the story change, *under direct and brazen coaching of the officers*, as quoted in-part below.

12. The Defendant motions for the Court to please order the City and State to identify the "Man in the Gray T-shirt' in the above photo.

13. The Defendant motions for the Court to please order the City and State to identify the shirtless
individual in the black shorts and black socks seen in this photo, and referred to as "2nd Male
Crossfitter" in this transcript:



**TRANSCRIPT THE OFFICERS COACHING THE WITNESSES AND FEEDING THEM VERBATIM
STATEMENTS:**

```
            KATS: What's wrong with him [Teman]?
            Reisgo: He's complaining of neck pain.

            …
            REISGO: You saw him [Teman] hit a person?
            KATS: No
            ...

            REISGO (10:50): So he doesn't want to give a statement without a
            lawyer
            KATS: LAUGHS
            REISGO: So he's going to get [transported] to Mt. Sinai. It's what
            you guys want to do. Obviously (pointing to SIBLESZ) she's the
            primary victim, you know she doesn't want to pursue any charges… For
            you (to Kats), how did those injuries happen?
```

**KATS: I charged him [Teman] and they [Kats' necklaces] broke**

...

**RODRIGUES  (13:03): It would help if she wanted to press charges. You know what I'm saying?**

KATS: We'll see what's going to happen

KATS: Isa, do you want to press charges?

SIBLESZ: It will help you? [Siblesz pointing to Katz[ (13:16)

**2nd MALE CROSSFITTER: Because he's [Teman is] going to.**

KATS: If something rolls around, you know…

2nd Male CrossFitter (to Pasquale the Caffe Umbria Owner): "You're the owner, you know our position… **but we have to protect him (pointing to Kats) because you know**

Cafe Owner: Yeah, yeah, yeah, no, no, no.

**2nd Male CrossFitter: "That's a lot of people not coming to the coffee shop anymore."[5]**

**REISGO: It [the surveillance video] doesn't show him [Ari] pushing…**
but the story… **as long as the story is consistent**

SILBLESZ: In the camera you see me running, and then you see a bunch of people, and then you see him.

Cafe Owner (inaudible).

KATS: I mean he's the initiator… **but how does that fall back on me**

REISGO: No it doesn't. So what happens in this situation. Let's say there's no video. There's no witnesses. We write up a report. You guys go to the State Attorney's office… the stories are consistent… obviously… Our experience as cops, when they don't want to speak, it is what it is, **you don't have to speak to the police.** However, you know, you can. Even if you, the owner…the city owns, and even though he's a customer and he spoke to the owner, and the owner…so I'm just … he went…

RODGIGUES (to KATS): The way the law works the issue with that person… just because he did that to him, doesn't give you the right to do to him…

RIESGO: What this is about getting your stuff fixed, your chain… (16:18)[6]

REISGO: Now if you say "I shoved him because I was protecting somebody or coming to somebody's defense.. Then yes, he's liable to

---

[5] This appears to be extortion, threatening the Caffe Umbria owner with a boycott to get him to press charges or assist them in doing so.

[6] Officer Reisgo appears to be telling Kats if he has Teman arrested he can get Teman to pay for repairing his necklace

fix that [the chain]"...



14. The Defendant respectfully motions for the State and City to identify by name all individuals shown here watching the surveillance video from Caffe Umbria, as mentioned in the above transcript quote:



15. The Defendant respectfully requests the City and State be ordered to to explain exactly what Officer Rodriges meant when she said to Kats, "doesn't give you the right to do to him…"

(Upon information and belief, Rodriges meant body-slamming Teman while Teman, "was trying to get a video of all of us." If so, the City and State should stipulate that Kats attacked Teman unprovoked, that Teman was not near Kats, and as Kats says,

16. The  Defendant respectfully motions for the court to order the State and City to provide all examples in the last 36 months where the Miami Beach Police officers have given witnesses scripted statements to make, as Reisgo gave to Kats in the above transcript.

**The State Must Identify the CrossFit Group Member Violating a Restraining Order Who's Ex Asked He Be Arrested, and the Supervising Officer who directs Reisgo and Rodriques to redact him from their report:**

17. The police conspired to leave out a participant, a member of the CrossFit Group, and witness who was apparently repeatedly violating a restraining order by running loops around his ex and her new boyfriend (even though he did not even live in the area and was staying at a hotel and there are many other fitness options that do not involve running circles around his ex).:

16:23[7]: Someone (Later called Hicks?) calls Rodrigues (at 12:32 PM, according to RODRIGUES' phone):

REISGO: Yes sir. Yep.

17:00 REISGO: Yes, he told us about that. He works out at the CrossFit gym. The one on the corner. On alton.

…

REISGO: 18:18 Yeah, he's staying at a hotel. He doesn't live at the area, but he works out at the gym. And he came over to give a statement. Yeah. No, no no, he works out. Yeah, and then he came over to give a statement. Yeah, yeah, nah that was it, yeah. Yeah 18:54 no we we had one of the witnesses go back to the crossfit and call ==other witnesses for our case, and he came.== [8]Hold on a second Hicks (spc?). Sorry J_ I was just going to call you. There's nobody responding. No no perfect

19:27 . Hey can you hear me. Hicks, you there? Yeah, So he was over there and they came back. Or we summoned them to come and give an independent statement. And while he was talking, he looked over  and he said his old girlfriend was with her new boyfriend and ==snapped a picture of him and was like she has a restraining order against me and we're supposed to go to court tomorrow==. She was walking with I guess her boyfriend in the general area. It wasn't just him. It was a group of people we called. I don't know how that plays out, but I don't think we can arrest him. Obviously, not knowing the situation. But he did say that she took a picture of him.

**==RODRIGUES: She wanted to have him arrested. (20:46)==**

---

[7] Video at : https://bit.ly/MBTemanRestrainingOrderMan
[8] To be clear, if this individual was a witness to this case, then he was apparently running loops repeatedly around where his ex with the restraining order was with her boyfriend. This is more suspect given he does not live in the area and was staying at a hotel, so choosing that specific area to run circles around his ex is obviously strange and worthy of investigation for the sake of impeachment evidence.

REISGO: No no this is um  (12:36PM according to Rodrigues' phone seen on BWC footage) He took a picture of her (mimics taking a picture) because a guy has a

RODRIGUES: Restraining order

RIESGO: Restraining order. Can't be withing 500 feet.

18. The Defendant asks the Court to order the City to produce:

    1. the full name and contact information for man with the restraining order against him,

    2. the full name and contact information for the woman (his ex) who called the police,

    3. the 911 or other recording of that call,

    4. the restraining order,

    5. her contact information,

    6. her boyrfriend's contact information,

    7. the index or case number for the court appearance they had.

    8. the officer on the phone's name (Hicks?) and badge number

    9. Disciplinary records and all records for all three officers (Reisgo, Rodrigues, Hicks)

    10. and a recording of that call if you have it or a phone log.

    11. Any and all records generated from that call by that woman

    12. The photo she took of the man (who seems to have been running loops around her!)

19. The City and State has ignored multiple requests to provide this information.

20. This information is obviously impeachment evidence, and speaks to a pattern of threatening and rule-breaking behavior by the CrossFit Group.

21. If the police cannot identify the individuals and other discovery items in the immediately proceeding list they should be ordered to dismiss this case immediately.

**The State Must Identify the CrossFit Group Member who states on BWC that she is longtime friends with Officer Reisgo:**

22. The Defendant respectfully motions for the Court to please order the State and City to produce the identify of the woman (a member of the CrossFit Group, as well, apparently) who says she is a longtime friend of Officer Reisgo:

23. A transcript of that footage shows the witnesses stop and huddle to coordinate testimony after being notified by Rodrigues that the SAO (State Attorney) is going to contact them to ask questions about the case, and that the officers *walk away* from this conversation and begin to speak with a longtime friend (referred to below as "2nd Crossfit Woman") of Offier Reisgo.

```
3:00 RODRIGUES: The state attorney is going to contact you (to
SIBLESZ)
KATS: About what
RODRIGUES: To ask you about the story
KATS: One second, let's just talk about this. (Pulls SIBLESZ aside)
RODRIGUES: Alright!

[Katz, Siblesz, and a 3rd individual, male begin to coordinate
inaudibly (it may be possible to enhance the audio]
[Police walk away as witnesses coordinate]

[3:30]
REISGO: He called the ambulance. I went to talk to him and he's like
well I don't want to give a statement without a lawyer. so he's
playing one of those, so [Woman: yeah] he's going to go to jail. We're
going to arrest him now.

RODRIGUES: Well, now they're talking. they're trying to make a
decision

2nd CROSSFIT WOMAN: "We know each other (pointing  to REISGO, telling
RODRIGUES]
REISGO: Yeah
2nd CROSSFIT WOMAN: WHen he had hair
REISGO: (Takes off his hat): Look at this, now it's not there…
2nd CROSSFIT WOMAN: (inaudible) over the years
REISGO & RODRIGUES: Laugh
2nd CROSSFIT WOMAN: Some of us are getting white hair and
REISGO: Yeah, yeah
(4:01)
```

REISGO: Yes, yes, I just need to do more traveling. I still see you traveling around… for sure, for sure…

2nd Crossfit woman: It's such a small community that…

REISGO: I know, I know, especially here…

2nd: Well I started at Memorial at 07

REISGO: I was 06

2nd: I don't know what I knew you so much…

REISGO: We were in the main OR doing spines and such



24. The Court should please order the State and City to identity the woman who claims to Rodrigues that she is a longtime friend of Riesgo.

25. The Court should also please order the State and City to identify all times where a police officer decided to immediately arrest an individual, *even though the witnesses (as Kats and Siblesz did) said on BWC that they did not want to press charges and were not injured.*

26. The Court should also please order the State and City to provide copies of all BWC footage in all cases where the police urge witnesses to press charges after the witnesses say they do not want to.

27. The Court should also please order the State and City to identify the CrossFit gym to which Officer Rodriges is a member.

**The State Must Identify the CrossFit Group Member Who Asks Siblesz to Press Charges to Help Kats avoid being arrested, and who attempts to extort the Caffe Umbria Owner to do similarly:**

28. The Defendant respectfully motions the court to order the State and City to identify the individual shown in black shorts and black socks and no shirt in the photo below, and to provide his full name, phone, email, address, and any and all criminal and civil court case histories, local, state, Federal, and any international cases as well.

29. The Defendant also respectfully motions the court to order the State and City to issue a statement and legal analysis as to why the individual was not arrested for brazenly extorting the cafe owner to press charges, as in the transcript above, and quoted here for convenience:

> 2nd Male CrossFitter (to Pasquale the Caffe Umbria Owner): "You're the owner, you know our position… **but we have to protect him (pointing to Kats) because you know.**
> Cafe Owner: Yeah, yeah, yeah, no, no, no.
> **2nd Male CrossFitter: "That's a lot of people not coming to the coffee shop anymore."**



30.

31. Furthermore, the Defendant motions the Court to order the City and State to produce additional items in discovery. This should be understood as a first motion, because each item provided by the state to-date has revealed other issues for which the Defendant has added to the discovery requests.

32. **Pursuant to Rule 3.220(b) of the Florida Rules of Criminal Procedure, the Defendant is requesting the following items as part of the State's ongoing discovery obligations, and motions for the Court to order the State (meaning the Miami Beach prosecutors office, the SAO, and the Miami Beach Police) to provide:**

    1. All notes regarding the BWC and this case, by the State and the arresting agency (the Miami Beach PD), including but not limited to: handwritten notes, text messages, notes and documents, chat messages, SMS and other mobile messages, phone logs, video and/or audio recordings, forms, and in any format, digital or paper(3500 Material),

    2. All access logs, edit logs, server access and login logs for anyone and everyone who accesses the Axon BWC and any ancillary systems.

    3. All physical access logs and security camera footage for any and all times the BWC cameras and servers and any terminals or PCs or mobile devices were used to access the BWC footage. That is, a showing of any and all persons who were in physical proximity to any system with view, edit, delete, archive, or other permissions to access the BWC footage and BWC devices.

4. A certified transcript of all BWC footage by a licensed Court Reporter certified to work in the State of Florida

5. Names of all witnesses

6. Misconduct records for all police officers involved at any time with this matter, including the officer(s) on the phone with Reisgo.

7. The name of the individual with the restraining order and his contact information, and the name of the woman who filed it. As well, the restraining order itself and the contact information for that woman's attorney.

8. A recording and official or certified transcript of the 911 call or however the police were requested by the CrossFit group or otherwise, such at Reisgo and Rodriges arrived on the scene

9. A recording and official or certified transcript of the 911 call or however the police were requested by the woman holding the restraining order, mentioned above

10. Copies of any and all video, documents, messages, texts, radio recordings, photos, and any and all other documents relevant to this case. Documents shall be understood to include electronic and paper documents, emails, letters, forms, and any and all documents as known to legal practitioners and as commonly defined in many legal matters.

11. Copies of any and all video, documents, messages, texts, radio recordings, photos, and any and all other documents relevant to Teman, maintained by any office of Miami Beach,

12. Copies of any and all video, documents, messages, texts, radio recordings, photos, and any and all other documents relevant to any and all witnesses, at any time in their interaction with the City or State, civil or criminal or other.

13. Full criminal and court records, if any, of any and all witnesses, including any dispositions and deals. (Brady, Jenks, and Giglio material)

14. A full and complete list of any and all accusations against the Miami Beach Attorney's Office and/or any of its individual prosecutors (at prior roles) for prosecutorial misconduct or other violations of ethics, including but not limited to Brady, Jenks, Giulio and similar type complaints, as well as motions for sanctions and complaints against them for any alleged violations of discovery obligations in any type of case, criminal or civil.

15. A full list of lawsuits and any complaints of any form by anyone against the city for failing to mitigate potential injuries from repeated activities by athletes or groups

16. A full and complete list of any and all civil rights complaints against Miami Beach and/or the Miami Beach Police in the past 5 years

17. A full and complete list of any complaints of discrimination, racism, deprivation of rights, assault, battery abuse of process, and malicious prosecution against the city, the mayor, the Police Department, and the current commissioners.

18. A list of attorneys and organizations who represents the police officers in their personal capacities and if they have legal representation

19. All communications within and between members of the Council and/or Mayor's Office and/or anyone working for the City regarding this case.

20. All communications within and between members of the Council and/or Mayor's Office and/or anyone working for the City regarding Teman

21. The internal notes regarding this case, as well as the internal notes (3500 material) of all city attorneys regarding Teman and regarding this case

22. All non-public documents and recordings, including but not limited to BWS recordings, radio recordings, arrest notes and files, emails, text messages, social media and mobile messages, and any other documents referring to the "Jewish Community" by Officer Rodrigues, Officer Reisgo, the Miami Beach Police (any officer), the Miami Beach Counsel, and the Mayor's and Vice Mayor's offices.

23. Any and all individuals who saw Ms. Siblesz throw a chair, as she said on BWC footage: "(4:05) "I grabbed the chair and threw it.", including but not limited to the "Gray T-Shirt Man" who per Dan Maza's statement (provided to the Court and to Mr. Nahum's team) struck Teman in the chest.

**Additional Discovery Requests Pending**

33. The Defendant notifies the Court that this is just the first of additional motions for discovery, and that obviously as discovery materials are produced, the Defendant may need to seek additional discovery.

**In support of this Motion, the Defendant states as follows:**

34. In March 2023 and up to and beyond On April 6, 2023, the Defendant served a Demand for Discovery on the State, pursuant to Rule 3.220(b) of the Florida Rules of Criminal Procedure, which requested, among other things, the access log of all BWC footage, including any video or audio recordings, and an explanation for gaps and cuts in the video.

35. The State has not provided the requested access log or an explanation for the gaps and cuts in the BWC footage.

36. The requested access log is material and relevant to the defense of the charges against the Defendant, as it may contain exculpatory evidence, evidence of police misconduct, or evidence that could affect the credibility of the witnesses.

37. The failure of the State to provide the requested access log and an explanation for the gaps and cuts in the BWC footage is a violation of the Defendant's rights under the Florida Rules of Criminal Procedure, the Florida Constitution, and the United States Constitution.

38. The State has ignored multiple requests for Discovery as outlined above.

39. The Court has the authority to compel the State to provide the requested access log and an explanation for the gaps and cuts in the BWC footage pursuant to Rule 3.220(f) of the Florida Rules of Criminal Procedure, as well as the items listed additionally.

40. WHEREFORE, the Defendant respectfully requests that the Court enter an Order directing the State to provide the requested access log of all BWC footage and an explanation for the gaps and cuts in the video, and provide a template for requesting additional items in discovery.

**PRESERVATION OF ANY AND ALL ISSUES FOR APPEAL**

41. Defendant respectfully notes that because he does not have counsel, and has been refused counsel even though he cannot afford counsel, he cannot possibly know which issues to raise and preserve for appeal and therefore raises an objection and sustains for appeal everything the Government and Court

did and does, since he cannot know or learn all of Florida and Miami Dade and Federal law in the span required to represent himself pro-se. To wit, the fastest law school program is 2 years, and that doesn't prepare anyone for such a task as the Court has forced the defendant to handle pro se.

42. Thus, the Defendant has been and continues to be irreparably harmed and placed at a severe disadvantage, being denied counsel, public defense, and the investigators and other resources which come with such an assignment.

## BOND TRAVEL CONDITIONS BEING REMOVED NOT OBJECTED-TO BY THE CITY

43. In the interest of the Court's time, the Defendant notes that Mr. Nahum has already emailed Mr. Teman that the City does not object to travel restrictions being removed from Mr. Teman's bond conditions. This will enable Mr. Teman to travel to his mother before her surgery in Israel, and to court and healthcare appointments in New York and New Jersey. Mr. Teman is not a flight risk, and has an appearance before the Second Circuit on May 11, 2023 in New York City which he must attend. He is under Federal Supervision and has been given permission to travel internationally by Judge Paul Engelmayer, including to Australia, to perform at the Melbourne Comedy Festival, from which Mr. Teman (obviously) returned.

## DISCLAIMER REGARDING TRANSCRIPTION

44. For an avoidance of doubt, Mr. Teman hastily prepared the transcripts and is not a professional transcriber, attorney, or court reporter. There may be typographic errors, and mistakes in the form and format in which they are presented. For this reason, Mr. Teman has linked directly to the video files of the BWC cameras, and included timestamps at times to help find those clips. Mr. Teman is not making a representation that the transcripts are full and accurate, and they are obviously clips, small parts of individual transcripts. They should not be taken as a statement of fact, and should be understood as only a helpful tool to help the Court understand the context in which the Defendant is requesting specific discovery items.

## MOTION FOR SANCTIONS

45. The Defendant makes these requests because Mr. Nahum Joseph and his team have refused to provide this information since last month, longer than 15 day period by which they are supposed to provide discovery. The Defendant therefore motions for Mr. Joseph to be sanctioned and ordered to pay the costs of an attorney and an investigator to gather this information.

## MOTION TO BE ASSIGNED COUNSEL

46. As the Court can now see, there are complicated issues at-hand, including what clearly appears to be the police guiding witnesses *who said they did not want to press charges and were not injured* into pressing charges and regurgitating statements drafted by Officer Reisgo, to protect Kats from being charged with assault for body-slamming Teman.

47. Mr. Teman is also under Bond Pending Appeal in SDNY and therefore there are Special Circumstances where a conviction could result in incarceration such as through revocation of bond conditions allowing freedom of movement and travel.

48. Such a complicated matter cannot be fairly tried, or even investigated and prepared by a pro-se defendant.

49. This motion and all related tasks are too burdensome and complex for Mr. Teman to perform, but without Mr. Teman making such motions Mr. Nahum ignores requests To wit, Mr. Nahum sent nothing to Mr. Teman until Mr. Teman filed a Federal Suit in SDNY to compell Nahum to do so.

50. As well, Mr. Teman has been diagnosed with PTSD, and having to rewatch his assailant, Mr. Kats, over and over to prepare transcripts and motions, is deeply traumatizing and painful.

51. Furthermore, because of the extra time it takes an inexperience defendant to understand and prepare such motions, and because his very freedom and ability to travel to see family are at stake, Defendant was forced to working on his defense on his religious holiday, Passover, because Pidyon Shvuyim, the freeing of a captive, takes precedence over ritual. However, Defendant would not need to violate his own holidays if he were assigned counsel, and thus provided investigators and professionals who are

skilled in these matters and how know how to, for example, analyze and transcribe BWC footage and make discovery motions.

52. For these reasons, and for the reasons set forth above, in the previous motion, and in accordance with *Padialla v Kentucky*, where Mr. Teman's international travel and ability to immigrate or emigrate could be harmed by a conviction even with a no-jail stipulation, the Defendant motions again to be assigned defense counsel.

## MOTION TO ORDER DISMISSAL IF BWC FOOTAGE & EVIDENCE CANNOT BE PRODUCED

53. The Defendant also asked the Court to issue an order that this case will be dismissed if the State and City are unable or unwilling to produce (a) the identities and contact information of all individuals mentioned above, (b) the missing or missed BWC footage of Officer Rodrigest after she mentioned the "Jewish Community", (c) the missing footage from both officer's BWC cameras of the Officers cuffing Mr. Teman to the hospital bed at first, (d) the details on the individual with the restraining order requested above, (e) the full civil and criminal court history of the "Gray T-Shirt man" and his identity and contact information. Without this information, the Defendant is being denied the ability to mount a complete defense, and it would be due to the police hiding the identities of individuals and content that would impeach the character of of the "CrossFit Group" which assaulted Teman.

Respectfully submitted,
APRIL 13, 2023

s/Ari Teman/
Defendant Pro Se

April 13, 2023